J-A26011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH BOLOGNA | : | No. 1967 EDA 2021 |

Appeal from the Order Entered August 31, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0011373-2020

BEFORE:   BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 14, 2023**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the August 31, 2021 order granting the Commonwealth's motion to refile simple assault and possession of instrument of crime ("PIC") charges against Joseph Bologna ("Appellee"), but denying the Commonwealth's request to refile two counts of aggravated assault and one count of recklessly endangering another person ("REAP") due to a lack of evidence.  We affirm.

On June 1, 2020, at approximately 6:00 p.m., an incident occurred at 229 North 22nd Street in Philadelphia involving Appellee, an on-duty, uniformed Philadelphia Police Officer, and Evan Gorski ("Gorski"), a protestor.  *See* N.T. Preliminary Hearing, 1/15/21, at 10-11.  Gorski had been marching in what began as a peaceful protest.  Appellee was the commander of a police

_____

[*] Retired Senior Judge assigned to the Superior Court.

bicycle patrol deployed to prevent protestors from entering an off-ramp to Interstate 676. At some point the protest devolved into a "chaotic scene," as protestors knocked down a permanent fixture fence, jumped on top of stopped vehicles, and threw various debris at the officers. *Id*. at 12, 48-49. Accordingly, the "police . . . created a line and were slowly pushing the line forward and giving commands to move. At the same time while everybody was stepping back, they were also grabbing and pulling people in towards their line." *Id*. at 12. Gorski explained that the officers appeared to be arresting the protestors that they pulled in towards the line.

During this time, Gorski observed an unknown protestor being "brought into the line" and attempted to interfere with his arrest by "pull[ing] the protestor back." *Id*. at 12. As he attempted to retrieve the protestor, Appellee struck him with a collapsible metal baton. Both men fell to the ground and Gorski sustained a head injury from the encounter. Thereafter, Gorski was taken to Thomas Jefferson University Hospital for treatment, where he received staples and stiches to close a head wound. He was then released without charges. Meanwhile, Appellee was arrested and charged with first-degree aggravated assault, second-degree aggravated assault, simple assault, REAP, and PIC.

On August 31, 2021, Gorski testified at Appellee's preliminary hearing, admitting that he had attempted to interfere with the arrest of another protestor before Appellee hit him in the head with his baton. The Commonwealth also admitted a video of the incident, which showed Gorski

- 2 -

interfering with an arrest and Appellee hitting him in the shoulder with the baton. Afterwards, both men fell to the ground and a brief struggle ensued. Gorski testified that he sustained a bruise on his shoulder and a head injury that required stitches and twelve staples. Appellee presented testimony from a police use-of-force expert, who opined that Appellee's actions were consistent with department policy. At the conclusion of the hearing, the court dismissed all charges for a lack of evidence.

The Commonwealth filed a motion in the Court of Common Pleas to refile the charges. On January 15, 2021, the trial court conducted a hearing on the Commonwealth's motion. At the hearing, the Commonwealth moved into evidence the notes of testimony from the original preliminary hearing, the video of the incident, Gorski's medical records, and photographs of his injuries. The parties stipulated that Gorski received twelve staples in his head on June 1, 2020. N.T., 8/31/21 at 15. Appellee relied on expert testimony from the preliminary hearing and admitted two reports from the medical examiner concluding that contact with Appellee's bicycle helmet during the fall was the cause of Gorski's scalp laceration. *Id*. at 20.

After viewing the video several times, the trial court found that the Commonwealth met its burden to establish a *prima facie* case for simple assault and PIC. However, the court concluded that the Commonwealth did not present sufficient *prima facie* evidence that Gorski was seriously injured, that Appellee acted with the specific intent to cause serious bodily injury, that Appellee placed Gorski in danger of death or serious bodily injury, or that the

- 3 -

baton constituted a deadly weapon given the way it was used. *See* Trial Court Opinion, 3/4/22, at 7-9. Accordingly, the court determined that the Commonwealth did not meet its burden to establish a *prima facie* case for either aggravated assault or REAP charges and denied the motion to refile those counts.

This timely Commonwealth appeal challenging the denial of its motion to refile the two aggravated assault and one REAP charges followed. Both the Commonwealth and the trial court have complied with the mandates of Pa.R.A.P. 1925, and this appeal is properly before us. *See Commonwealth v. Lambert*, 244 A.3d 38, 41 (Pa.Super. 2020) (an order discharging an accused constitutes a final order subject to appellate review). The Commonwealth presents the following issue for our review:

> Did the lower court err in denying the Commonwealth's motion to refile aggravated assault and [REAP] charges against [Appellee] where the evidence, when viewed in the proper light and accepted as true, established a *prima facie* case that [Appellee] committed these crimes and that he was not justified in doing so?

Commonwealth's brief at 4.

"It is well-settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." *Commonwealth v. Hilliard*, 172 A.3d 5, 12 (Pa.Super. 2017) (citation and internal quotation marks omitted). "[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth

- 4 -

has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005). Therefore, we are not bound by the legal determinations of the trial court and our standard of review is *de novo.* ***Id***.

"The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." ***Commonwealth v. Jackson***, 849 A.2d 1254, 1257 (Pa.Super. 2004) (internal citation omitted). Our Supreme Court has described the Commonwealth's burden at the preliminary hearing as follows.

> At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a *prima facie* case of guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material **elements of the crime charged** and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.

***Karetny***, ***supra*** at 513-14 (citations omitted, emphasis added). "The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." ***See Commonwealth v. Perez***, 249 A.3d 1092, 1102 (Pa. 2021). "[I]nferences reasonably drawn from the evidence of record which would support a verdict

- 5 -

of guilty are to be given effect and the evidence must be read in the light most favorable to the Commonwealth's case." ***Id***. at 1102.

The Commonwealth contends that it presented a *prima facie* case to establish first-degree aggravated assault, second-degree aggravated assault, and REAP. A person commits first-degree aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Criminal attempt occurs when a person, with the intent to commit a specific crime, does any act which constitutes a substantial step toward the commission of that crime. ***See*** 18 Pa.C.S. § 901(a). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death, or which causes serious, permanent, disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

A person commits second-degree aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). Bodily injury is defined as an "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. A deadly weapon includes "any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301.

Finally, a person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. REAP is a lesser-included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of REAP. *See Commonwealth v. Smith*, 956 A.2d 1029, 1036 (Pa.Super. 2008) (*en banc*).

The Commonwealth maintains that it presented sufficient *prima facie* evidence that Appellee committed these crimes since, at the preliminary hearing stage, the court must accept the Commonwealth's proffered evidence as true. *See* Commonwealth's brief at 16. In its view, since Gorski testified that Appellee struck him with the baton in his head, notwithstanding the video to the contrary, we must find that fact established. *Id*. at 18-19. Accordingly, because it is well-established that the use of a deadly weapon on a vital part of the body is sufficient to establish a specific intent to kill, the Commonwealth contends that Appellee's intent to cause the level of bodily injury required for the respective charges can be inferred from the circumstances. *Id*. at 18 (citing to *Commonwealth v. Nichols*, 692 A.2d 181, 184-85 (Pa.Super. 1997)).

However, the trial court disagreed with the Commonwealth, crediting the video over Gorski where the two pieces of Commonwealth evidence conflicted and finding that the Commonwealth failed to present sufficient evidence that Gorski suffered serious bodily injury or that Appellee possessed

a specific intent to cause serious bodily injury needed to establish a *prima facie* case of first-degree felony aggravated assault. **See** Trial Court Opinion, at 6. Instead, the court found that the video depicted a "very chaotic scene" during which Appellee only struck Gorski one time with the baton in order to stop Gorski from continuing to interfere with the arrest of another protestor. *Id*. at 6-7. Regarding the second-degree aggravated assault charge, the trial court found that the Commonwealth had not shown intent to cause bodily injury or presented *prima facie* evidence proving that the baton constituted a deadly weapon in the manner in which it was used. *Id*. at 8. Finally, the court found insufficient evidence to support the REAP charge, since the video did not show that Appellee placed Gorski in danger of death or serious bodily injury, but instead, merely responded to Gorski's attempt to interfere with Appellee's effort to arrest another protester. *Id*. at 9.

Preliminarily, we disagree with the Commonwealth's contention that we must accept Gorski's testimony that he was hit in the back of the head by the baton, despite a video of the incident to the contrary. It is well-settled that "where the testimony of a witness is contradicted by incontrovertible physical facts, the testimony of such witness cannot be accepted." **See Commonwealth v. Smarr**, 220 A.3d 633 (Pa.Super. 2019) (non-precedential decision at *10) (quoting **Commonwealth v. Newman**, 470 A.2d 976, 979 (Pa.Super. 1984)). Herein, Gorski's testimony clearly contradicted the video evidence regarding the part of the body where that the

baton made contact. Thus, we find that the trial court reasonably relied upon the video, instead of Gorksi's testimony, regarding an injury that was sustained outside Gorski's range of visibility during a "chaotic scene." Accordingly, we discern no error based on the trial court's reliance on the video, which the Commonwealth presented.

Our review of the video of the incident, which was presented by the Commonwealth at the hearing, supports the trial court's conclusions. The video evidence depicted a "chaotic scene" during which Gorski can be seen moving in the direction of Appellee and using his hand to pull a protestor away from the police. In a matter of seconds, Appellee responds by raising his baton towards Gorski. Gorski then stops trying to interfere with the arrest of the other protestor and takes a step backwards while Appellee simultaneously strikes him one time with the baton on the shoulder near the base of the neck. Appellee made no further attempts to strike Gorski with the baton as the two fell to the ground and Appellee placed Gorski under arrest.

Since Appellee only struck Gorski one time near the base of the neck and did not continue to engage in combative conduct once on the ground, we find that the trial court did not err when it found that the Commonwealth failed to establish a *prima facie* case of the intent elements of first-degree and second-degree felony aggravated assault. Furthermore, the Commonwealth did not elicit any testimony or offer any evidence suggesting that the manner in which Appellee utilized the baton constituted a deadly weapon necessary to

support a *prima facie* case of second-degree felony aggravated assault. ***See*** 18 Pa.C.S. § 2301; ***see also Commonwealth v. Cornish***, 589 A.2d 718, 721 (Pa.Super. 1991) (finding fireplace poker qualified as a deadly weapon after the defendant repeatedly struck the victim with it during a robbery, inflicting serious bodily injury). Finally, the video depicts Appellee making a single strike with his baton to thwart a protestor's attempt to interfere with an arrest, not cause him to suffer serious bodily injury. Thus, we also conclude that the Commonwealth failed to establish a *prima facie* case that Appellee recklessly placed Gorski in danger of death or serious bodily injury. ***See Commonwealth v. Bostian***, 232 A.3d 898, 912 (Pa.Super. 2020) (defining recklessness as a conscious disregard of a substantial and unjustifiable risk of harm to others).

Thus, we conclude that the Commonwealth has not satisfied its preliminary burden of establishing a *prima facie* case for aggravated assault and REAP.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2023

- 10 -